UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH DANIEL SHAW,

                Plaintiff,

-against-

ROBERT A. MCDONALD,
Secretary of the Department of Veterans Affairs,
DEPARTMENT OF VETERANS AFFAIRS,
EMS CHIEF TERRY VOGT,
NURSE MANAGER EILEEN HUGHES,
FOREWOMAN LAVANCHE THOMAS,
ACTING DIRECTOR MARA DAVIS,

                Defendants.

14 cv 5856 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Plaintiff, Kenneth Shaw ("Plaintiff") commenced the instant action against his employer, the Department of Veterans Affairs Hudson Valley Health Care System (the "VA"), and the Secretary of the Department of Veterans Affairs, Robert McDonald, as well as individual supervisors and employees of the VA, including environmental management services ("EMS") Chief Terry Vogt, Nurse Manager Eileen Hughes, Forewoman Lavanche Thomas, and Acting Director Mara Davis (collectively "Defendants"). In his amended complaint, Plaintiff alleges Defendants (1) discriminated against him on the basis of his religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and (2) retaliated against him after he filed charges with the Equal Employment Opportunity Commission, in violation of Title VII, § 1981. Plaintiff additionally challenges the determination of Administrative Law Judge Maureen Briody of the Merit Systems Protection Board ("MSPB").

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/8/2015

**BACKGROUND**

The following facts are drawn from Plaintiff's Complaint ("Compl.", ECF No. 1:1)[1], as well as the Merit Systems Protection Board ("MSPB") Complaint ("MSPB Compl.", ECF 1:2) and the April 2014 decision of the MSPB ("MSPB Decision", ECF No. 1:3.). These facts are taken as true for the purposes of resolving the instant Motion.

Plaintiff has worked for the VA since at least 2008,[2] when he was a Compensated Work Therapy worker. (MSPB Compl., 7.) Plaintiff has been employed as a Housekeeping Aid at the VA Montrose Facility since May 23, 2010. (MSPB Decision, 2.) The VA facility houses patients similarly to a nursing home. (*Id.*) On the morning of October 7, 2013, Plaintiff knocked on the closed door of patient Patrick Jones so that he could enter the room to empty the garbage. (*Id.*) Plaintiff's knocking woke up Mr. Jones, and, as a result, Mr. Jones was very upset. (*Id.*) The two exchanged words, and Mr. Jones became aggressively agitated, which led to Plaintiff instructing him to "calm the fuck down." (MSPB Compl*.,* 1.) Cynthia Todd, a coworker, overheard some of the initial exchange, and she filed a report with the foreman, Mr. Ruffin, alleging that Plaintiff had called the patient "a fucking faggot." (*Id.*) As a result of the incident, Plaintiff was transferred to Castle Point Campus the next day. (Compl., 4.) Two days later, Plaintiff was summoned to the police station on the VA campus and was questioned about the argument with Mr. Jones. (*Id.*) A police officer informed Plaintiff that he had been accused of asking a patient "outside to fight." (MSPB Compl*.,* 2.) Plaintiff completely denied this allegation and told the officer that he would give a statement "to the appropriate people." (*Id.*)

---

[1] Though Plaintiff filed an Amended Complaint, the Amended Complaint simply refers the Court to the original Complaint for the facts of the case.

[2] It is unclear from the record whether Plaintiff has worked for the VA consistently or periodically since 2008.

A few weeks later, Plaintiff attended a meeting with the forewoman Lavanche Thomas, who interviewed him about the incident. (*Id.*) In this meeting, Plaintiff stressed that he had always been a good worker and an advocate for the patients. (*Id.*) Sometime later, Plaintiff met with Terry Vogt, the chief of EMS, and two union representatives. (*Id*. at 3.) Defendant Vogt informed Plaintiff that he was proposing a removal of service due to the results of the investigation, and he gave Plaintiff a copy of the investigation report. (*Id.*) Plaintiff alleges that the report contains a number of falsities, including statements from Defendants Thomas and Hughes. (*Id.* at 3-4.) On November 21, 2013, Plaintiff met with the acting Castle Point Director, Mara Davis, regarding the proposed removal from service. (*Id.* at 5.) Plaintiff attempted to explain the abusive behavior and dishonesty of management, but Defendant Davis was unconvinced. (*Id.*) After the meeting, officials in Plaintiff's union told him that he would be offered a "last chance agreement and a fourteen-day suspension," but Plaintiff never actually received that offer. (*Id*. at 5-6.) Instead, on November 25, Plaintiff's foreman, Mr. Ruffin, informed him that he was being removed from service. (*Id*. at 6.)

Plaintiff believes that the aforementioned actions[3] were motivated by religious discrimination. Plaintiff alleges that the religious discrimination began with his supervisor in 2008, Julius Sally, who "would always make comments" to the Plaintiff, such as, "Who do I think you are? Malcolm X" and "everyone likes your work but not your opinions." (MSPB Compl*.,* 7.) The following year, Plaintiff sought to be hired into a permanent EMS role and was told that "service-connected veterans"[4] are prioritized in hiring. Plaintiff was denied, despite being service-connected, and Plaintiff later learned that "other less non-service connected

---

[3] Plaintiff's termination was mitigated to a 30-day suspension. *See generally* MSPB Decision.
[4] The Court believes Plaintiff is referring to the status of "service-connected disability," a designation for veterans who have become disabled due to an injury or illness related to military service.

3

veterans were hired" instead of him. (*Id.*; Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss "Pl.'s Memo", 6.) Plaintiff raised the issue with Vogt and an EEO counselor, but the situation was not addressed. (MSPB Compl., 7.) Plaintiff then submitted an EEOC complaint against Terry Vogt.[5] (MSPB Decision, 9.)

During his tenure at the VA, Plaintiff's coworkers would make comments to him about his religion, such as, "I didn't know you were a Muslim," as if to imply "there was something wrong with it." (MSPB Compl., 7-8.) Defendant Hughes also made a comment complaining about the smell of Plaintiff's food. (Compl., 2.) Moreover, Plaintiff alleges that another VA employee, Barry Richardson, was accused of similar misconduct but was not disciplined. (*Id.*, 3.) In response, Plaintiff again filed EEOC complaints in July and November of 2012. (Pl.'s Memo, 5.) Plaintiff believes that, due to the religious animus and Plaintiff's filing of these complaints, Defendant Vogt was "against" him, which led to Vogt recommending disciplinary action following the October 2013 mishap. (*Id.*) Based on the foregoing, Plaintiff alleges claims of religious discrimination and retaliation under Title VII.

Plaintiff additionally challenges the sufficiency and findings of the MSPB proceeding. (*See* Compl., 1.) Plaintiff claims that the "MSPB failed to show how the agency proved [] the alleged misconduct." (Pl.'s Memo, 6.) Most significantly, Plaintiff asserts that three agency witnesses submitted false testimony: (1) Defendant Davis lied about being unaware of Plaintiff's prior EEO activity; (2) Defendant Thomas wrote a false statement and signed Plaintiff's name to it; and (3) Defendant Todd lied in her report regarding Plaintiff's statements to Mr. Jones. (Pl.'s Memo, 8; MSPB Compl., 1.) Based on these allegations, Plaintiff appeals the findings of the MSPB.

---

[5] The record is devoid of any information regarding this complaint. The Court is unaware when it was filed, what it alleged, or how—if at all—it was resolved.

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555.

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Even so, "pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to

relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

### A. Religious Discrimination

To establish a prima facie case of employment discrimination, Plaintiff must show that (1) he is part of the protected age group, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Prior to the decisions of *Twombly* and *Iqbal*, the Supreme Court held that a plaintiff in an employment discrimination action was not required to "plead facts establishing a prima facie case" of discrimination, and characterized the *McDonnell Douglas* standard as "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). At the time *Swierkiewicz* was decided, however, the pleading standard was governed by the "no set of facts" test set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The continued viability of *Swierkiewicz* was therefore questioned following the holdings in *Twombly* and *Iqbal*. *See Schwab v. Smalls,* 435 Fed. App'x 37, 40 (2d Cir. 2011) ("questions have been raised ... as to Swierkiewicz's continued viability in light of *Twombly* and *Iqbal*"). The Second Circuit recently addressed this uncertainty and clarified the appropriate pleading standard in employment discrimination cases in *Vega v.*

6

*Hempstead Union Free School District*. 801 F.3d 72, 84 (2d Cir. 2015). In *Vega*, the court explained that "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss. Rather, because a temporary presumption of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Vega,* 801 F.3d at 84 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 306, 311 (2d Cir. 2015)) (internal quotation marks omitted).

Thus, to survive a motion to dismiss, a plaintiff must allege that "(1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. To meet this burden, a plaintiff can rely not only on direct evidence but also on "bits and pieces" of information to support an inference of discrimination, i.e., a "mosaic" of intentional discrimination to demonstrate this minimal inference of discriminatory motivation. *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998), abrogated in part on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). *See also Tolbert v. Smith,* 790 F.3d 427, 436–37 (2d Cir. 2015). At the pleading stage, then, the Plaintiff's burden is minimal – he must only plausibly allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. *See also Vega*, 801 F.3d at 84 ("At the pleadings stage, … a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.").

Here, Plaintiff alleges that he was dismissed from employment at the VA, which is sufficient to demonstrate an adverse action. The question for the Court is whether Plaintiff has adequately alleged that his Muslim faith was a motivating factor in the termination decision. Plaintiff provides four allegations that he believes paint a picture of intentional discrimination: (1) Hughes made a comment regarding the smell of cooked fish; (2) a former EMS foreman referred to Plaintiff as Malcolm X; (3) coworkers said to Plaintiff, "Shaw, I didn't know you were Muslim," in a way to suggest "there was something wrong with it"; and (4) the VA did not punish Barry Richardson, another employee, for similar conduct.[6] The Court finds that these allegations are insufficient to support a plausible inference of discrimination.

First, with regards to the comment regarding cooked fish, Plaintiff has not provided any detail as to how the comment relates to religious discrimination. It is unclear from the record that Hughes even directed these comments towards the Plaintiff. (*See* Pl.'s Memo, 5.) The Court therefore cannot draw any inference from these comments.

Second, the remarks in (2) and (3) are simply insufficient to draw any reasonable, plausible inference of discrimination. The Second Circuit has explained that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), abrogated on other grounds by *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). Although "there is no bright-line rule for when remarks become too attenuated to be significant to a determination of discriminatory intent,"

---

[6] Plaintiff additionally concludes that: "The motive to initiate removal is founded from my complaint with the Visn3 Director, Michael Saba in 2009" when, after Plaintiff was not hired for the permanent EMS position, "[t]he Visn3 director over-ruled the agency (Terry Vogt) and issued a direct hire decision." The Plaintiff has not explained what motive he is referring to or how the direct hire decision relates to the religious discrimination he asserts in the instant case. Without more, the Court cannot consider this assertion.

*Tolbert*, 790 F.3d at 437 (internal quotation marks and citations omitted), courts consider factors such as "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc*., 616 F.3d 134, 149 (2d Cir. 2010). When considering these factors, Plaintiff's allegations do not raise a right to relief above a speculative level.

The "Malcolm X" comment was made in 2008, and Plaintiff offers it to prove a discriminatory motivation for an adverse action occurring in 2013. Moreover, it is unclear whether the speaker, Plaintiff's former foreman, was still employed by the VA at the time of Plaintiff's discipline, and, in any event, the ex-foreman did not have any decision-making authority with regards to Plaintiff's employment in 2013. As for the second comment, statements of co-workers are irrelevant in that they do not have a "tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Tomassi*, 478 F.3d at 116. *See also Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) (statements by nondecisionmakers, or statements unrelated to the decisionmaking process, are insufficient from which to infer discriminatory intent), superseded by statute on other grounds as recognized in *Burrage v. United States*, 134 S.Ct. 881, 889 n. 4, 187 L.Ed.2d 715 (2014). Therefore, in the absence of other evidence of discrimination, these comments are not the type of "nonconclusory factual matter [that could] nudge [Plaintiff's] claims ... across the line from conceivable to plausible to proceed." *Vega*, 801 F.3d at 84 (internal quotation marks and citations omitted).

Finally, Plaintiff alleges that another employee, Mr. Richardson, was also accused of verbally abusing a patient but was not disciplined. (Compl., 3.) Instead, Mr. Richardson was allegedly transferred to another unit. (Compl., 3.) It is true that "[a] plaintiff may raise [] an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir. 2000) (citing *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). However, Plaintiff has not provided the Court with sufficient information to draw this inference. Specifically, Plaintiff does not provide facts that could demonstrate to the Court that Mr. Richardson was similarly situated, that he engaged in similar behavior, or that Mr. Richardson was outside his protected class (i.e., not a Muslim). *See Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000) (finding that a "similarly situated" comparator requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, including acts of comparable seriousness). Without these allegations, the Court cannot find any inference of discrimination and therefore must dismiss Plaintiff's discrimination claim.

    *B. Retaliation*

In order to state a claim for retaliation under Title VII, a plaintiff establishes "a prima facie case by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted); accord *De Cintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 116 (2d Cir. 1987). With respect to the fourth element,

> Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment . . . or through

> other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant.

*De Cintio*, 821 F.2d at 116 (internal citations omitted). With respect to establishing causation indirectly, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001). Significantly, "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.") (internal quotation marks omitted) (citing *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (4-month period insufficient)); *cf. Gorman-Bakos*, 252 F.3d at 555 (inferring causal connection where retaliatory conduct spanning 5-month period followed three instances of protected activity by a few days, two months, and three months, respectively). However, the Second Circuit has allowed for longer periods of delay where, for instance, retaliators reasonably could have waited for an opportune time to retaliate. *See, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding 6-month period sufficient because prison officers could have waited for an opportune time to beat prisoner "to have a ready explanation for any injuries [he] suffered"); *Grant v. Bethlehem*

11

*Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (affirming finding that eight-month gap between EEOC complaint and retaliatory action suggested causal relationship because it was the first opportunity for retaliation).

At the outset, the Court notes that the pleadings only contains sporadic, incomplete references to alleged protected activity. From a thorough search of the record, the Court was able to locate three allegations of EEOC activity – complaints in 2008/2009 (MSPB Decision, 10); a complaint filed in July 2012 (Pl.'s Memo, 5); and an "appeal" filed in November 2012 (*id.*). Even if the Court were to find these allegations sufficient to plead protected activity, the Complaint is deficient as to the fourth element of a prima facie case of retaliation – a causal connection. Plaintiff claims that these protected activities were a motivation for his termination in November 2013. Even with regards to the latest complaint, one year separates the protected activity from the adverse employment decision. Without any alleged explanation for the delay, a one year gap is too attenuated to establish a causal relationship. *See Gorman-Bakos*, 252 F.3d at 554. Moreover, Plaintiff has not provided any facts from which the Court could conclude that the termination was nevertheless retaliatory because this was the first opportunity for retaliation. Therefore, the Plaintiff's claim of retaliation fails as a matter of law.

    *C. Individual Liability*

The Second Circuit has determined that the remedial provisions of Title VII do not provide for individual liability. *See Tomka v. Seiler Corp*., 66 F.3d 1295, 1313–14 (2d Cir. 1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Moreover, "an employer's agent may not be held individually liable under Title VII, even if she has supervisory control over the Plaintiff." *Boyd v.*

*Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522, 534 (S.D.N.Y. 2001). Therefore, to the extent Plaintiff asserts claims against Mara Davis, Terry Vogt, Lavanche Thomas, and Eileen Hughes in their individual capacities, those claims must be dismissed.

As to the nondiscrimination claims, the employing agency is the only proper defendant. *See Williams v. McCausland,* 791 F. Supp. 992, 998 (S.D.N.Y. 1992) ("only [the] Director of the [agency] is a proper defendant to [the nondiscrimination] claims") (citing 5 U.S.C. § 7703(a)(2) (either the MSPB or the "agency responsible for taking personnel action shall be respondent")); *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 686 (Fed. Cir. 1992) ("if the merits of the agency action are reached by the MSPB, and at the same time a matter of important MSPB procedure or jurisdiction is involved, ... the employing agency is the proper respondent."); *Amin v. Merit Sys. Prot. Bd.*, 951 F.2d 1247, 1251 (Fed. Cir. 1991) ("in appeals involving underlying personnel actions and attorney fees, the employing agencies should be the respondents"). Therefore, only the VA is the proper defendant as to the nondiscrimination claims, and any nondiscrimination claims against the individual defendants must be dismissed.

### D. Leave to Amend

"'[A] pro se complaint is to be read liberally,' and should not be dismissed without granting leave to replead at least once when such a reading 'gives any indication that a valid claim might be stated.'" *Barnes v. U.S.*, 204 Fed. App'x 918, 919 (2d Cir. 2006) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). To the extent Plaintiff can, in good faith, plead additional facts regarding Mr. Richardson or the statements made, as described above, to demonstrate an inference of discrimination, the Court grants Plaintiff an opportunity to amend his complaint to state a valid claim for discrimination. The Court reminds Plaintiff that, if

he is to take advantage of the opportunity to amend, he must allege additional facts directly supporting an inference of discriminatory motivation.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's claims for discrimination and retaliation pursuant to Title VII are DISMISSED in accordance with this Opinion. The nondiscrimination claims against the individual defendants are also DISMISSED. Plaintiff shall have until 30 days from the date of this Order to amend the Amended Complaint as to the discrimination claim. If Plaintiff elects to file a second amended complaint, Defendant shall have until 30 days from the date of Plaintiff's filing to move or file responsive pleadings. If Plaintiff does not file a second amended complaint, Defendant shall have until 60 days from the date of this Order to file responsive pleadings on the remaining claims. An initial in-person case management and scheduling conference pursuant to Fed. R. Civ. P. 16 is scheduled for February 11, 2016, at 11:30 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Court respectfully directs the Clerk to terminate the motion at ECF No. 18.

Dated: December 8th, 2015
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge